# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:18-cv-148-FDW

| | |
|---|---|
| GARY D. GOCHIE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| KEN BEAVER, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Second Amended Complaint, (Doc. No. 20). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 11). Also pending is Plaintiff's "Motion for Copies," (Doc. No. 21).

## I. BACKGROUND

*Pro se* Plaintiff is a North Carolina inmate who is currently incarcerated at the Alexander Correctional Institution. Plaintiff has filed a Second Amended Complaint pursuant to 42 U.S.C. § 1983 in which he complains about the conditions of his confinement at Alexander C.I. Plaintiff names as Defendants: Alexander C.I. Superintendent Ken Beaver, Assistant Superintendent Eric Dye, Unit Manager Kenny Boteat, and Assistant Unit Manager Elizabeth Powell.

Construing the Second Amended Complaint liberally and accepting it as true, Plaintiff has been unable to obtain legal help from North Carolina Prisoner Legal Services ("NCPLS") and the Court will not appoint counsel even though his claim is just. There are no law books in the prison library, there is no law library in North Carolina prisons, there are no local rules or federal rules in the prison libraries and inmates cannot get copies of legal filings. Plaintiff had to file for an extension of time to file an amended complaint because the prison would not sell him a pen or

1

pencil or give him carbon paper to do his legal work. He argues that, "[e]ven if [his] claim fails to show any 'actual injury.' The above listed cases show that my fight to the courts were still denied." (Doc. No. 20-1 at 2). The lack of law libraries and refusal to provide someone trained in the law are the reason why more cases are not pending against the North Carolina Department of Public Safety ("NCDPS"). Inmates do not understand how many rights are violated daily or how to go about stating a claim, which allows prisons to get away with unconstitutional conditions of confinement. The courts should not allow this to continue. The prisons should install computers for legal use with access to legal research sites like LexisNexis that would be cost effective and would not pose a security risk. At one point Plaintiff was not being given pens or pencils and he was unable to buy them because he was on "Canteen Restriction." (Doc. No. 20-1 at 12). Plaintiff had to barter and trade which is against policy. Plaintiff is not trained in the law and "[t]he Courts have denied [his] case and in doing so quoted cases that I've no way to look up…. That is actual injury. Because I can not properly rebut." (Doc. No. 20-1 at 11).

Plaintiff said that his First Amendment rights were being infringed but "Judge Whitney said [he] didn't claim a factual element" so Plaintiff is enclosing the paper that was sent to him by the mailroom at Alexander with an attached page from the prison rule book. (Doc. No. 20-1 at 3). The prison is supposed to notify the inmate of a denied publication. NCPDS policy says the inmate may receive any book or mag sent by a distributor who isn't on the "ban" list. If it is on the list, it can be returned at inmate expense or destroyed, and the sender is notified by the prison. NCDPS policy isn't being followed; none of the books Plaintiff received were on any ban list and he was never asked to send back or destroy a book, nor was he notified by the prison that any book was to be returned. Plaintiff has never had a book denied for contraband and no contraband has been found in any book addressed to him. All his books are from distributors, book stores, or nonprofit

organizations. The prison pays someone to look through each book. On January 15, the prison received a stamped letter to Plaintiff from his birth mother. He was not given the letter until January 23, eight days later. (Doc. No. 20-1). He has been sent a card from one person and three letters from Katie Leeson in the last three weeks. He has not received any of these pieces of mail. Plaintiff is being denied books for his education and rehabilitation such as "Brainfeed" books. Denying or holding mail from loved ones and friends causes emotional strain. Plaintiff's birthday was January 28 and he received no mail from loved ones because the prison is holding it. His daughter's birthday was on February 7, Plaintiff mailed her 10 days ago and has not yet received a response from her. Plaintiff has yet to receive a letter that was sent 24 days ago. A year ago, a staff member at prison told them that the prison now has an x-ray machine to examine books. Federal law and prison policy say that "at no time may a Prison hold mail more than 24 hrs after it was received." (Doc. No. 20-1 at 4). In the note sent to Plaintiff by the mailroom, no claim or reason was given, and no security can explain the note as all mail is screened. No justifiable reason can be given. Equal protection of the law applies. (Doc. No. 20-1 at 8). Plaintiff has attached several documents to his Second Amended Complaint including a note purportedly from Alexander C.I.'s mailroom staff stating "Alexander Correctional Institution will no longer accept free books unless it is from a religious distribution center or a legal distributor. Please stop all orders to receive free books. All free books are being returned to sender. Mail room staff." (Doc. No. 20-1 at 15).

The prison is not filing grievances as they should. When grievances are sent to headquarters they get returned and Plaintiff is told to file through the chain of command. The refusal to file or process grievances is denying Plaintiff and others administrative remedy. (Doc. No. 20-1 at 5). Plaintiff notified the "heads of Alexander C.I." that Defendant Powell is not filing grievances and administration did nothing to correct the problem. The person who Powell reports to, Boteat, did

not care that Powell was not doing her job. (Doc. No. 20-1 at 5). Plaintiff tried to file a remedy but "they" refused to do so and now the matter is for the courts to grant "remedy and reimbursement" (Doc. No. 20-1 at 6). The prison can be made to pay sanctions or the Court can order it to follow the policies that it is ignoring. The prisons do their best to not allow inmates to gain proof. They do not have cameras, the privilege to use copy machines, or email. Group movements, even when nonviolent, are considered riots and result in solitary confinement, loss of privileges, three or more months of "Mod Housing," *i.e.* 24-hour lockdown, loss of gain time, increase in custody level, security risk group designation. (Doc. No. 20-1 at 7). The courts could have ordered videos. The courts can order a record of grievances which are properly filed digitally. Prison officials acted with deliberate indifference by ignoring his grievances about "issues." (Doc. No. 20-1 at 8). The exhibits show that Plaintiff went to higher and higher administration at Alexander C.I. but his issues were still ignored.

The prison was forcing inmates to take cold showers. For "days on end," they only had cold water in the cells so inmates could not take "'bird baths' (sink baths) make soups or warm coffee." (Doc. No. 20-1 at 9-10). It is required in maximum security in North Carolina that a nightlight be installed in every cell for security reasons and for the wellbeing of inmates. Plaintiff filed a request and went through the full grievance procedure about his nightlight being out. It was like that for over 120 days, in a cell where he was locked in solitary confinement 24 hours per day, seven days per week. (Doc. No. 20-1 at 10). Extremely low light for reading is harmful to the eyes which is "actual injury." (Id.). Lights after the last formal count are to stay off until morning's first official count unless staff is doing a cell search or strapping someone down. Many nights the main cell lights come on for hours "without a security reason." Video footage would prove this. Plaintiff believes that federal law requires lights to be out for at least eight hours a day. Sleep deprivation

4

and cold showers are torture pursuant to the Geneva convention and is subjecting them to actual injury. (Doc. No. 20-1 at 10). Inmates are forced to wear dirty clothes which is inhumane and puts inmates at risk of disease and infection. Written policy says inmates are not allowed to personally wash or dry clothing in their cells. This forces them to wear old underwear. This is cruel and unusual punishment and actual injury.

In the section of the complaint for addressing injuries, Plaintiff states "I've suffered relief from injustice of my Human Rights I've suffered refusal to courts. I've suffered 8th Amendment violations to my Rights of proper lighting, hot water and properly prepared food." (Doc. No. 20 at 5).

Plaintiff argues that the current administration is unfit and should be replaced and that Powell should be demoted or fired because she "was one of the biggest contributors to the injustices in 'lockup.'" (Doc. No. 20-1 at 13). Plaintiff seeks nominal, compensatory, and punitive damages, and injunctive relief. (Doc. No. 20 at 5).

## II. STANDARD OF REVIEW

A "court shall dismiss [a prisoner's] case at any time if the court determines that ... the action or appeal ... fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or

5

delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983 and Bivens). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

### III.   DISCUSSION

**(1)   Claims on Behalf of Others**

Plaintiff attempts to present claims on behalf of others. However, his status as a *pro se* prisoner precludes him from making claims on behalf of others. See Hummer v. Dalton, 657 F.2d 621, 635-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); Oxendine v. Williams, 509 F.2d 1405 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). Therefore, to the extent the Amended Complaint seeks relief on behalf of individuals other than the Plaintiffs, these claims

are dismissed.

**(2)     Conditions of Confinement**

The Eighth Amendment prohibits punishments that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103 (1976) (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The Constitution "does not mandate comfortable prisons, … but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)). Thus, prison official must provide sentenced prisoners with adequate food, clothing, shelter, and medical care, and "take reasonable measures to guarantee the[ir] safety…." Hudson v. Palmer, 468 U.S. 517, 526-27 (1984); see Farmer, 511 U.S. at 832-34. Inmates' claims that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir.1987). To establish the imposition of cruel and unusual punishment, a prisoner must prove two elements: (1) "the deprivation of [a] basic human need was objectively sufficiently serious," and (2) "subjectively the officials act[ed] with a sufficiently culpable state of mind." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quotation omitted).

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297-99 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission ... result[s] in the

7

denial of the minimal civilized measure of life's necessities.'" Id. at 298 (citing Rhodes, 452 U.S. at 347).

Plaintiff alleges that he went without a night light for several months, that lights are sometimes turned on after the final count at night, cells and showers lack hot water, clean clothes are not provided daily, and meals are sometimes insufficient and not served hot.

The conditions of confinement that Plaintiff has identified amount to nothing more than "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler, 989 F.2d at 1380. They are not sufficiently serious to amount to a constitutional violation. See, e.g., Shrader v. White, 761 F.2d 975 (4th Cir.1985) (allegations that there were leaking ceilings, cold water in cells, dripping shower heads, the shower area was covered in rust, mold, and mildew, and shower controls did not work failed to state an Eighth Amendment claim); Smith v. Does, 2009 WL 305099 (S.D.W.Va. Feb. 6, 2009) (allegations of inadequate ventilation, no desk or chair, inadequate space between beds, inadequate head room for inmates on top bunks, poor lighting, poor hygiene resulting in offensive odor, sound pollution, locker disrepair, and mattresses without proper covers did not rise to the level of an Eighth Amendment claim). Therefore, Plaintiff's claim that the conditions of his confinement violate the Eighth Amendment will be dismissed.

 **(3)** **Grievances**

"[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). A prisoner's "access to and participation in the prison's grievance process are not constitutionally protected…." Taylor v. Lang, 483 Fed. Appx. 855, 857 (4th Cir. 2012).

Plaintiff alleges that he does not have sufficient access to the prison grievance procedure,

however, he has no constitutionally recognized right to engage in the prison grievance procedure, so any alleged deficiency in that procedure does not state a § 1983 claim.

**(4)    Access to Courts**

Inmates have a constitutional right to a "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts" which a state may not abridge or impair. Bounds v. Smith, 430 U.S. 817, 821 (1977); Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). To make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). The injury requirement is not satisfied by any type of frustrated legal claim; the prisoner must demonstrate that his nonfrivolous post-conviction or civil rights legal claim has been frustrated or impeded. See Lewis v. Casey, 518 U.S. 343, 353 (1996). "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Casey, 518 U.S. at 355.

Plaintiff alleges that he does not have access to a prison library, procedural rules, photocopies, someone to assist him, photocopies, and occasionally, a pen or pencil. Plaintiff alludes to an action before Judge Whitney, the fact that he had to ask for an extension of time to file the Amended Complaint in the instant case because he lacked a pen and carbo paper, and he refers to a case that was "denied." (Doc. No. 20-1 at 11). This claim is facially insufficient because Plaintiff fails to allege that Defendants' actions actually injured him by causing a nonfrivolous post-conviction or civil rights claim to be frustrated or denied. Therefore, Plaintiff's claim that he has been deprived of access to the courts will be dismissed.

**(5)    Mail**

The First Amendment states that "Congress shall make no law … abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Pell v. Procunier, 417 U.S. 817, 822 (1974); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. N.C. Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

As a general rule, prisoners have the right to both send and receive mail. See Thornburgh v. Abbott, 490 U.S. 401, 408 (1989); Pell, 417 U.S. at 817. Restrictions on this right are valid if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89 (1987). For instance, a prisoner's First Amendment interest in corresponding does not preclude prison officials from examining mail to ensure that it does not contain contraband. Wolff v. McDonnell, 418 U.S. 539, 576 (1974).

Plaintiff alleges that his mail is held by the prison for several days before it is delivered to him and that his educational books are being returned to sender pursuant to Prison policy mandates even though the books are not from banned sources and he has no record of contraband or other actions that would justify their return. These allegations are not clearly frivolous and the Court will permit this claim to proceed.

**IV.     PENDING MOTION**

Plaintiff asks the Court to provide him "copies of all papers" filed in this case to be made

for free, or that they be added to costs. (Doc. No. 21 at 1). There is no provision in the in forma pauperis statute for the payment by the government of the costs of deposition transcripts, discovery costs, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant. See 9 Charles Alan Wright & Arthur A. Miller, Fed. Prac. & Proc., Civ. § 2370 (3d ed., April 2019 Update). Therefore, Plaintiff's Motion will be denied.

V. **CONCLUSION**

For the reasons stated herein, the Second Amended Complaint will proceed on Plaintiff's claim of interference with the mail but the remaining claims are dismissed for failure to state a claim upon which relief can be granted.

**IT IS, THEREFORE, ORDERED** that:

1. The Second Amended Complaint, (Doc. No. 20), survives initial review on Plaintiff's claim that Defendants interfered with his right to receive mail; the remaining claims are dismissed pursuant to § 1915(e)(2)(B)(ii).

2. Plaintiff's "Motion for Copies," (Doc. No. 21), is **DENIED**.

3. **IT IS FURTHER ORDERED THAT** the Clerk of Court is directed to commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants **Ken Beaver, Eric Dye, Kenny Boteat,** and **Elizabeth Nicole Powell** who are current or former employees of NCDPS.

Signed: May 13, 2019

Frank D. Whitney
Chief United States District Judge